UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20 CR 70 SRC |
| | ) | |
| JOSHUA C. MCDONALD, | ) | |
| | ) | |
| Defendant. | ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

## 1. PARTIES:

The parties are the defendant Joshua C. McDonald, represented by defense counsel Mr.
Kevin Curran, and the United States of America (hereinafter "United States" or "Government"),
represented by the Office of the United States Attorney for the Eastern District of Missouri. This
agreement does not, and is not intended to, bind any governmental office or agency other than
the United States Attorney for the Eastern District of Missouri. The Court is neither a party to
nor bound by this agreement.

## 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the
defendant's voluntary plea of guilty to Counts One, Two, Three and Four of the charge, the
United States agrees that no further federal prosecution will be brought in this District relative to
the defendant's scheme to obtain investors in his fraudulent Forex investment plan between
November 2017 and June 2019, of which the Government is aware at this time.

1

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

The defendant also agrees, pursuant to the guilty plea to Counts One, Two, Three and Four, to the entry of a forfeiture money judgment up to the amount of $240,000, which is equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to defendant's violations.

**3. ELEMENTS:**

As to Counts One through Four, the defendant admits to knowingly violating Title 18, United States Code, Section 1343, and admits there is a factual basis for the plea and further fully understands that the elements of the crime of Wire Fraud are: 1) defendant devised and intended to devise a scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations and promises; 2) defendant transmitted and caused to be transmitted in interstate commerce, certain signs, signals and sounds by means of a wire communication; and 3) defendant did so for the purposes of executing the scheme and artifice to defraud.

2

## 4. **FACTS**:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Defendant was the owner and operator of Perfection PR Firm LLC, a Delaware limited liability corporation that conducted business in the Eastern District of Missouri. Perfection PR Firm LLC ("Perfection PR") operated from approximately January 2016 until at least March 2019. Defendant told potential and actual clients that Perfection PR traded in the Foreign Exchange Market (Forex) for clients by pooling their funds.

FINRA (Financial Industry Regulatory Authority) operates the Central Registration Depository (CRD), the central licensing and registration system used by the U.S. securities industry and its regulators. Defendant was not registered as a broker-dealer, broker-dealer agent, investment advisor, investment advisor representative, or an issuer agent as required.

Designated by the Commodity Futures Trading Commission (CFTC) as a registered futures association, the National Futures Association (NFA) is the industrywide, self-regulatory organization for the U.S. derivatives industry. Firms acting as counterparties to retail forex transactions, as well as forex pool operators, trading advisors and introducing brokers are required to register with the CFTC and become Members of NFA. Defendant was not registered with the National Futures Association's BASIC database as any type of commodity merchant or intermediary in connection with futures trading.

Defendant solicited individuals and entities for a pooled investment vehicle through his company Perfection PR that purportedly traded off-exchange or margined foreign currency

3

exchange ("forex") contracts.  Defendant falsely represented to prospective clients that Perfection PR had been in business for five years, that he had four years of successful forex trading experience, and that he was successfully managing million dollar investments for clients. He falsely represented to prospective clients that he would provide a minimum of 20% to 50% return on their forex investment per month and that only a small percentage of investors' forex funds would be at risk at any time.

Defendant falsely represented to prospective clients that he had a 100% success rate with all his clients and provided prospective clients with false documents that purported to show these "successful stories."  He falsely represented to investors that they had made substantial gains in their forex investments with him when, in truth and fact, he had misappropriated their funds and, without their knowledge or consent, invested their funds in cryptocurrency.  At the direction of defendant, investors deposited their forex investments funds, primarily through wire transfers, into a Citibank bank account in his name or a Regions Bank account in the name of Perfection PR.

Victim M.B.

In November 2017, defendant falsely represented to M.B., a resident in the Eastern District of Missouri, that he would invest M.B.'s funds in forex trading, and that at no time would more than 10% of his money be at risk. He falsely told M.B. that his return on his forex investment would be 20% to 60%. Defendant falsely told M.B. that he had previously worked at a large firm and left that firm to start his own company, Perfection PR. On November 17, 2017, M.B. and defendant, doing business as Perfection PR, signed a Forex Investment Agreement. M.B. agreed to invest $100,000. Defendant agreed to place M.B.'s investment in his Forex

4

Trading Program for a minimum of 30 days and stated that the minimum goal was a 20% return on investment per month. Defendant told M.B. that defendant would take a 35% fee from each month's profit as compensation. M.B. did not authorize defendant to invest his funds in cryptocurrency.

In reliance on defendant's false representations, on November 20, 2017, M.B. wired $100,000 from his business bank account in the Eastern District of Missouri to defendant's Citibank account in Tennessee. In violation of their agreement, and without M.B.'s knowledge or consent, defendant transferred over $14,000 of M.B.'s investment into cryptocurrency. Defendant repeatedly falsely told M.B. that he was earning profits for him. In reliance on defendant's false representations, in January 2018, M.B. wired an additional $50,000 from his business bank account in Missouri to defendant's Citibank account for an additional forex investment. Defendant falsely represented to M.B. in a "Forex Earnings Report" that M.B.'s $150,000 forex investment had made $67,866.82 in profit between November 2017 through the end of February 2018, when he well knew that he had not invested $150,000 of M.B.'s funds in forex and he had not made the claimed profit. M.B. requested $20,000 of his forex investment be returned. On March 21, 2018, after an extended period of time, defendant sent M.B. his requested $20,000. Subsequently, M.B. requested $100,000 of his forex investment back and defendant never sent the funds. On May 4, 2018, defendant sent an email to M.B. that stated that his entire forex investment had been lost. In fact, defendant had used a large portion of M.B.'s forex investment to speculate in cryptocurrency and for defendant's personal expenses.

On November 20, 2017, in the Eastern District of Missouri and elsewhere, defendant, for the purpose of executing this scheme and artifice to defraud, and in attempting to do so, and to

5

obtain money and property by means of material false and fraudulent pretenses, representations and promises, did knowingly and willfully transmit and cause to be transmitted in interstate commerce, certain signs, signals and sounds by means of a wire communication, that is, the wiring of $100,000 from M.B.'s Bank of America business account in the Eastern District of Missouri to defendant's Citibank account in Tennessee.

### Victim T.D.

In November 2017, defendant falsely represented to T.D., a resident in the Eastern District of Missouri, that he would invest T.D.'s funds in forex trading and that he would generate forex investment returns of approximately 20% per month. On November 27, 2017, T.D. and defendant, doing business as Perfection PR, agreed to a Forex Investment Agreement. T.D. agreed to invest $10,000. Defendant agreed to place T.D.'s investment in his Forex Trading Program for a minimum of 30 days and stated that the minimum goal was a 20% return on investment per month. T.D. did not authorize defendant to invest his funds in cryptocurrency.

In reliance on defendant's false representations, on December 11, 2017, T.D. wired $10,000 from his U.S. Bank bank account in the Eastern District of Missouri to Perfection PR's Regions Bank bank account in Tennessee for his forex investment. In violation of their agreement, and without T.D.'s knowledge or consent, defendant transferred over $4,000 of T.D.'s investment into cryptocurrency.

On March 1, 2018, defendant sent T.D. a false "Forex Earnings Report" that purported to show that T.D.'s $10,000 forex investment had grown to $12,544. On April 11, 2018, defendant sent T.D. a false "Forex Earnings Report" that purported to show that T.D.'s $10,000 forex investment had grown to $13,672.96. Defendant well knew said statements were false in that

6

defendant had not invested $10,000 of T.D's funds in forex and he had not made the claimed

profits. T.D. repeatedly requested that defendant return his forex investment funds. Defendant

promised to wire the funds back in 2018 but no funds were returned. In fact, defendant had used

a large portion of T.D.'s forex investment to speculate in cryptocurrency and for defendant's

personal expenses.

On December 11, 2017, in the Eastern District of Missouri and elsewhere,

defendant, for the purpose of executing this scheme and artifice to defraud, and in attempting to

do so, and to obtain money and property by means of material false and fraudulent pretenses,

representations and promises, did knowingly and willfully transmit and cause to be transmitted in

interstate commerce, certain signs, signals and sounds by means of a wire communication, that

is, the wiring of $10,000 from T.D.'s U.S. Bank bank account in the Eastern District of Missouri

to Perfection PR's Regions Bank bank account in Tennessee.

Victims S.R. and B.R.

In January 2018, defendant falsely represented to S.R. and B.R., residents in the Eastern

District of Missouri, that he would invest their funds in forex trading and that he could earn 20%

to 50% return on investment in a month. He also falsely told them that only two to four percent

of their forex investment would be traded to ensure that their forex investment funds would be

safe. He showed B.R. false documents that purportedly showed that defendant had investment

success with a "million dollar client."

On January 9, 2018, S.R., through the entity BandMe Inc., and defendant, doing business

as Perfection PR, signed a Forex Investment Agreement. S.R., through BandMe Inc. agreed to

invest $100,000. Defendant agreed to place S.R.'s investment in his Forex Trading Program for

7

a minimum of three months and stated that the minimum goal was a 20% return on the forex investment per month. Neither S.R. nor B.R. authorized defendant to invest their funds in cryptocurrency.

In reliance on defendant's false representations, on January 9, 2018, S.R. and B.R., on behalf of BandMe Inc., sent an interbank transfer of $90,000 from S.R. and B.R.'s Eastern District of Missouri bank account, via Regions Bank, to Perfection PR's Regions Bank bank account in Tennessee for their forex investment. In the following months, defendant falsely represented that S.R. and B.R.'s forex investment had grown to over $111,000. In violation of their agreement, and without S.R. and B.R.'s knowledge or consent, defendant transferred over $20,000 of S.R. and B.R.'s investment into cryptocurrency.

When S.R. and B.R. asked defendant to withdraw their forex investment funds from the account, defendant refused. Defendant has not returned any funds to S.R. or B.R. In fact, defendant had used a large portion of their forex investment to speculate in cryptocurrency and for defendant's personal expenses.

On or about January 9, 2018, in the Eastern District of Missouri and elsewhere, defendant, for the purpose of executing this scheme and artifice to defraud, and in attempting to do so, and to obtain money and property by means of material false and fraudulent pretenses, representations and promises, did knowingly and willfully transmit and cause to be transmitted in interstate commerce, certain signs, signals and sounds by means of a wire communication, that is, the interbank transfer of $90,000 from S.R. and B.R.'s Eastern District of Missouri bank account, via Regions Bank, to Perfection PR's Regions Bank bank account in Tennessee.

8

Victim M.D.

In January 2018, defendant falsely represented to M.D., a resident in the Eastern District of Missouri, that he would invest his funds in forex trading and that he would earn a 20% return on his forex investment in a month. On or about January 17, 2018, M.D. and defendant, doing business as Perfection PR, agreed to a Forex Investment Agreement. M.D. agreed to invest $10,000. Defendant agreed to place M.D.'s investment in his Forex Trading Program for a minimum of three months and stated that the minimum goal was a 20% return on his forex investment per month. M.D. did not authorize defendant Joshua C. McDonald to invest his funds in cryptocurrency.

In reliance on defendant's false representations, on January 17, 2018, M.D. wired $10,000 from his Hannibal National Bank bank account in the Eastern District of Missouri to Perfection PR's Regions Bank bank account in Tennessee for his forex investment. In January 2018, in violation of their agreement, and without M.D.'s knowledge or consent, defendant transferred $9,800 of M.D.'s investment into cryptocurrency.

On April 17, 2018, defendant falsely represented that M.D.'s forex investment had grown to $11,200, which he characterized as a 20% profit, when he well knew that he had placed $9,800 of M.D.'s funds in cryptocurrency, not forex, and no such profit had occurred. On April 17, 2018, M.D. told defendant he wanted to close his account and have his funds returned to him. Defendant failed to return any funds to M.D. In fact, defendant had used a large portion of M.D.'s forex investment to speculate in cryptocurrency after falsely stating that he would invest said funds in forex.

9

On or about January 17, 2018, in the Eastern District of Missouri and elsewhere, defendant, for the purpose of executing this scheme and artifice to defraud, and in attempting to do so, and to obtain money and property by means of material false and fraudulent pretenses, representations and promises, did knowingly and willfully transmit and cause to be transmitted in interstate commerce, certain signs, signals and sounds by means of a wire communication, that is, the wiring of $10,000 from M.D.'s Hannibal National bank account in the Eastern District of Missouri to Perfection PR's Regions Bank bank account in Tennessee.

The Government contends that the amount of loss to M.B., T.D., S.R., B.R, and M.D. is $240,000. The defendant contests the amount of loss.

> Other victims

The Government contends that, as part of his scheme to defraud, defendant obtained funds from other victims outside the Eastern District of Missouri through the use of similar material false representations and promises. Those victims include P.D.P., H.E., R.P., K.B., J.D., R.P., and A.S. Defendant contests the number of victims.

**5. STATUTORY PENALTIES:**

As to Counts One through Four, the defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than twenty years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than three years.

**6. U.S. SENTENCING GUIDELINES: 2018 MANUAL:**

10

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

**a. Chapter 2 Offense Conduct:**

**(1) Base Offense Level:** The parties agree that the base offense level is seven (7), as found in Section 2B1.1(a)(1) (Larceny, Embezzlement and Other Forms of Theft).

**(2) Specific Offense Characteristics:** As to the following Specific Offense Characteristics:

(a) The Government contends that ten (10) levels should be added pursuant to Section 2B1.1(b)(1)(F), because the loss was "more than $150,000." The defendant reserves the right to dispute the amount of loss.

(b) The Government contends that two (2) levels should be added pursuant to Section 2B1.1(b)(2)(A)(i) because the offense "involved ten or more victims." The defendant reserves the right to dispute the number of victims.

**b. Chapter 3 Adjustments:**

**(1) Acceptance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are

11

inconsistent with defendant's eligibility for this deduction, the government may present said

evidence to the court, and argue that the defendant should not receive all or part of the deduction

pursuant to Section 3E1.1, without violating the plea agreement.

   **(2) Other Adjustments:**  The parties agree that the following additional adjustments

apply:

   (a) two (2) levels should be added pursuant to Section 3B1.3, because "the defendant

abused a position of public or private trust."

   **c. Other Adjustment(s)/Disputed Adjustments:**  none

   **d. Estimated Total Offense Level:**  The Government estimates that the Total Offense

Level is eighteen (18).  The defendant reserves the right to dispute the Total Offense Level as

outlined in paragraph 6.a.(2).

   **e. Criminal History:**  The determination of the defendant's Criminal History Category

shall be left to the Court.  Either party may challenge, before and at sentencing, the finding of the

Presentence Report as to the defendant's criminal history and the applicable category.  The

defendant's criminal history is known to the defendant and is substantially available in the

Pretrial Services Report.

   **f. Effect of Parties' U.S. Sentencing Guidelines Analysis:**  The parties agree that the

Court is not bound by the Guidelines analysis agreed to herein.  The parties may not have

foreseen all applicable Guidelines.  The Court may, in its discretion, apply or not apply any

Guideline despite the agreement herein and the parties shall not be permitted to withdraw from

the plea agreement.

12

### 7. **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

**a. Appeal:**  The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

    **(1) Non-Sentencing Issues:**  The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

    **(2) Sentencing Issues:**  In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

**b. Habeas Corpus:**  The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:**  The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records

13

pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

    **a. Disclosures Required by the United States Probation Office:**  The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

    **b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**  Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

    **c. Supervised Release:**  Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed.   These conditions will be restrictions on the defendant to which the defendant will be required to adhere.  Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release.  The defendant understands that parole has been abolished

    **d. Mandatory Special Assessment:**  Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $400, which the defendant agrees to pay at the time of sentencing.  Money paid by the

14

defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

   **e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

   **f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

   **g. Forfeiture:** The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. The defendant agrees to the entry of a forfeiture money judgment up to the amount of $240,000. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The

15

defendant knowingly and intelligently waives all constitutional and statutory challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees that said items may be disposed of by law enforcement officials in any manner.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the

16

waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

17

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

4/15/21
_____
Date

_____
**CARRIE COSTANTIN**
Assistant United States Attorney

4/15/21
_____
Date

_____
**JOSHUA C. MCDONALD**
Defendant

18

4·15·21
_____
Date

**KEVIN CURRAN**
Attorney for Defendant

19